IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| | | |
|---|---|---|
| AUTO OWNERS INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff | | |
| | ) | |
| v. | ) | No. 4:05-cv-39 |
| | ) | |
| HARRELL'S FERTILIZER, INC., *et al.*, | ) | |
| | ) | |
| Defendants | ) | |

## **MEMORANDUM OPINION**

This is a declaratory judgment action brought pursuant to 28 U.S.C. § 2201. Plaintiff Auto Owners Insurance Company seeks a declaration that it has no duty to defend or duty to indemnify defendants Harrell's, Inc., and Harrell's Fertilizer, Inc., in a case currently pending in this court, *Glenn Stoner, et al., v. Harrell's Fertilizer, Inc., et al.*, No. 4:04-cv-94. That case is currently set for trial on April 25, 2006.

Currently pending are cross motions for summary judgment [Court Files #17; #25). Because the court concludes that Auto Owners has a duty to defend the

lawsuit, plaintiff's motion for summary judgment [Court File #17] will be denied and defendants' motion for summary judgment [Court File #25] will be granted. Whether plaintiff has a duty to indemnify will depend upon the outcome in Case No. 4:04-cv-94. Accordingly, this action will be dismissed.

I.

*Factual Background*

The following factual allegations are considered in the light most favorable to the non-movant.

On August 31, 2004, Glenn Stoner, Christopher Stoner, and Stoner Nursery (underlying plaintiffs) filed an action against Harrell's Fertilizer, Inc., and Lee Patterson, which was removed to this court from the Circuit Court of Warren County, Tennessee. That case is Case No. 4:04-cv-94 (underlying lawsuit).

The central contention in the complaint in the underlying lawsuit is that fertilizer designed, manufactured and sold by Harrell's to the Stoner Nursery damaged, stunted the growth of, or destroyed Stoner Nursery's plants, making them unmarketable or unsalvageable. In that action, Stoner Nursery seeks compensatory damages for: (1) damages related to Stoner Nursery's labor to treat the damaged

2

plants and destroy plants that were unsalvageable; (2) loss of value of the unmarketable plants; (3) costs of storage of the unmarketable plants; (4) costs to retain inventory due to the unmarketable plants; (5) incidental and consequential damages including lost profits on the "plants unable to be sold due to the lack of growth caused by the defective fertilizer;" and (6) damages due to loss of customers resulting from the unmarketable plants.

Defendants in this action contend that all of the damages claimed by the plaintiffs in the underlying lawsuit flow directly from alleged "property" damage, the stunting or destruction of the plants caused by the fertilizer. All parties concede that the underlying complaint is vague and is difficult to discern the causes of action put forth by the Stoners. However, it does appear that Stoner Nursery in the underlying lawsuit appears to be asserting claims for: (1) strict liability in tort; (2) negligent manufacture and design; (3) negligence; (4) negligent misrepresentation; and (5) breach of warranty.

The insurance policy at issue is a Commercial General Liability Policy issued to Harrell's under policy number 854612-20352174-02, with effective dates of coverage from February 12, 2002, to February 12, 2003 (the Policy). Among other coverages provided, the Policy expressly provides that Auto Owners "will pay those sums that the insured becomes legally obligated to pay as damages because

3

of ... 'property damage' to which this insurance applies. The Policy further provides that Auto Owners "will have the right and duty to defend any 'suit' seeking those damages." The insurance provided by the policy applies to property damage "only if: (1) the ... 'property damage is caused by an occurrence that takes place in the coverage territory;' and (2) the ... 'property damage occurs during the policy period.'" Under the Policy, the phrase "property damage" is a defined term and is specifically defined to include:

> A. Physical injury to tangible property, including all resulting loss of use of the property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> B. Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the occurrence that caused it.

Under the terms of the Policy, "occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

The Policy also has a number of exclusions as follows. The insurance does not apply to "property damage" expected or intended from the standpoint of the insured. Section I - Coverages, Coverage A. Bodily Injury and Property Damage Liability II. Exclusions. The Policy further excludes property damage to any part of

4

the property that must be restored, repaired or replaced because "your work" was incorrectly performed on it. Section I, Exclusions, j(6).

## II.
### *Summary Judgment Standards*

Pursuant to Rule 56, summary judgment shall be rendered when requested if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. It is the burden of the party seeking summary judgment to show the court that, under uncontradicted facts, the moving party is entitled to judgment as a matter of law. Summary judgment is intended to provide a quick, inexpensive means of resolving issues as to which there is no dispute regarding the material facts. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). In assessing the validity of a summary judgment motion, the court views the pleadings, depositions, answers to interrogatories, admissions, and competent affidavits in a light most favorable to the opponent of the motion. However, an opponent to a motion for summary judgment may not rest upon the mere allegations or denials of his pleadings, but must set forth through competent and material evidence specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). "[T]he mere

5

existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an essential element of that party's case, and on which the party will bear the burden of proof at trial. *Catrett*, 477 U.S. at 322.

III.

***Applicable Legal Standards***

The interpretation of an insurance contract presents a question of law for the court. *Gas Kwick v. United Pacific Insurance Company*, 58 F.3d 1536, 1538-39 (11th Cir. 1995). A declaratory judgment proceeding provides an appropriate vehicle for deciding coverage questions. *Higgins v. State Farm Fire & Casualty Co.*, 894 So.2d 5 (Fla. 2005). Insurance contracts are interpreted under the laws of the state where they are delivered, initiated and to be performed. *American National Bank & Trust Co. of Bowling Green, Kentucky, v. Hartford Accident & Indemnity Co.*, 442 F.2d 995, 998 (6th Cir. 1971). Harrell's and Harrell's Fertilizer, Inc.'s principal place of business in Florida. The insurance policies were delivered to Harrell's in Florida. Therefore, it is undisputed that this court should interpret the terms of the

6

insurance contracts under Florida law and apply those terms of the elements of the Tennessee law claims asserted in Case No. 4:04-cv-94.

Applicable Florida law provides as follows. Commercial, general liability policies are intended to protect against the possibility that goods, products or work of insured, once relinquished or completed, would cause ... damage to property other than to [the insured's] product or completed work itself. *Homeowner Warranty Corp. v. Hanover Ins. Co.*, 683 So.2d 527 (Fla. 3rd D. Ct. App. 1996). The purpose of comprehensive insurance coverage is to provide protection for personal injury or property damage caused by the completed product, but not for the replacement or repair of that product. *LaMarche v. Shelby Mutual Ins. Co.*, 390 So.2d 325, 326 (Fla. 1980).

In the context of the duty to defend, even if just one allegation in the underlying complaint is covered or potentially covered, the insurer owes a duty to defend. *See Continental Casualty Co. v. Charleston*, 704 So.2d 137, 138 (Fla. 1st D. Ct. App. 1997). The law places this duty on an insurer irrespective of the number of allegations that may be excluded or otherwise not covered by the policy. *Drexel Chem. Co. v. Bituminous Ins. Co.*, 933 S.W.2d 471 (Tenn. Ct. App. 1996). The law places this duty on an insurer irrespective of the number of allegations that may be

7

Case 4:05-cv-00039   Document 29   Filed 01/20/06   Page 7 of 10   PageID #: 7

excluded or otherwise not covered in the policy. *Id.* The Tennessee Court of Appeals has noted:

> An insurer's duty to defend is separate and distinct from the insurer's obligation to pay claims under the policy. The duty to defend is broader than the duty to indemnify. ... Even if one of the allegations is covered, the insurer has a duty to defend, irrespective of the number of claims that may be excluded by the policy. An insurer may not properly refuse to defend an action against the insured unless "it is plain from the face of the complaint that the allegations fail to state facts that can bring the case within or potentially within the policy's coverage."

*Drexel Chem.*, 933 S.W.2d at 479. In addition,

> Where the allegations of the complaint against the insured are ambiguous or incomplete and it is doubtful whether or not they state a cause of action within the coverage of the policy sufficient to compel the insurer to defend, such doubt will be resolved in favor of the insured.

*Dempster Bros., Inc. v. U.S. Fidelity & Guaranty Co.*, 388 S.W.2d 153, 156 (Tenn. Ct. App. 1964). One commentator has noted:

> Courts apply a universal standard to determine whether the duty to defend arises: The insurance company is obligated to defend if the allegations raise any possibility of coverage under the policy.

*Insurance Coverage Litigation* § 3.05 (2 ed. 1999).

Upon a review of the allegations of the complaint in the underlying lawsuit, it is clear that they raise claims of property damage to the plants. The allegations are that the fertilizer caused the plants to be unmarketable and that the claimants were therefore claiming property damage. While some of the claims may have been for economic loss, clearly some were for property damage. Since there is at least a possibility that the plaintiffs in the underlying lawsuit could prevail on a claim for property damage, Auto Owners' duty to defend that lawsuit arose. In addition, I find that the claims of property damage could arise out of an "occurrence" since the policy provides that an occurrence means "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Arguably that includes the "continuous or repeated exposure" of the plants to the insured's fertilizer. I also find that none of the exclusions clearly apply to bar all of the underlying claimants' property damage claims, bearing in mind that the insurance policy must be construed under Florida law, which interprets coverage disputes in favor of the insured when the terms of the policy are ambiguous.

IV.

*Conclusion*

In light of the foregoing, plaintiff's motion for summary judgment [Court File #17] will be denied; defendants' motion for summary judgment [Court File #25]

9

will be granted; and this action will be dismissed. This memorandum opinion is limited to a determination that plaintiff has a duty to defend the underlying lawsuit. Whether plaintiff has a duty to indemnify must await resolution of the underlying lawsuit.

       Order accordingly.

                                                    *s/ James H. Jarvis*
                                      UNITED STATES DISTRICT JUDGE